## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BARBARA GRANT,

     Plaintiff,

v.                            Case No.: 8:21-cv-01977-TPB-CPT

HEALTHCARE REVENUE RECOVERY
GROUP, LLC,

     Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

COMES NOW, Plaintiff BARBARA GRANT ("Plaintiff"), by and through undersigned counsel, and files this Response in Opposition to Defendant's Motion for Judgement on the Pleadings (DE 16), stating the following in support thereof:

### I.    Introduction

Despite admitting that it has violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"), a law enacted over 40 years ago, Defendant, Healthcare Revenue Recovery Group, LLC ("Defendant"), requests this Court enter judgment in its favor. Reduced to its essence, Defendant's position is: "We cannot be held liable because we didn't know we couldn't do that." While Defendant's unsubstantiated representations cannot be confirmed at the pleading stage, it matters not. Defendant's argument must fail as: (1) the Court lacks discretion to apply the

Eleventh Circuit's ruling in *Hunstein*[1] purely prospectively; (2) mistake of law is not a defense to a FDPCA claim; (3) even if Plaintiff were to lack Article III standing, the remedy is remand, not judgment for Defendant; and, (4) Defendant asks the Court to improperly consider matters outside of the pleadings.

## II.      Factual Background / Procedural History

Section 1692c(b) of the FDCPA, enacted in 1977 and unchanged since, provides that "[e]xcept as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."[2]

On April 21, 2021, the Eleventh Circuit Court of Appeals issued its decision in *Hunstein v. Preferred Collection and Mgt. Services, Inc.*, 994 F.3d 1341 (11th Cir. 2021). In *Hunstein*, the plaintiff brought suit under the FDCPA and FCCPA[3] alleging

---

[1] *Hunstein v. Preferred Collection and Mgt. Services, Inc.*, 994 F.3d 1341 (11th Cir. 2021).

[2] The provision that § 1692c(b) cross-references—§ 1692b—governs the manner in which a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information." *See,* 15 U.S.C. § 1692b. Neither Plaintiff's claims nor Defendant's defenses implicate section 1692b.

[3] Florida Consumer Collection Practices Act, Fla. Stat. § 559, *et seq*. ("FCCPA").

that the defendant-debt collector electronically transmitted data concerning a consumer's debt to a third-party vendor, who in turn used the data to create, print, and mail a "dunning" letter to the plaintiff. *Id.* at 1344. The district court dismissed the action for failure to state a claim, concluding that the plaintiff had not sufficiently alleged that the defendant's transmittal to the vendor violated 15 U.S.C § 1692c(b) because it didn't qualify as a communication "in connection with the collection of a[ny] debt." *Id.* at 1345. On appeal, the Eleventh Circuit reversed, ruling that: (1) because § 1692c(b) bears a close relationship to invasion of privacy, a harm that American courts have long recognized as cognizable, and because Congress's judgment indicates that violations of § 1692c(b) constitute a concrete injury, the plaintiff had the requisite standing to sue; and (2) the defendant's transmittal of plaintiff's personal debt-related information to a third party vendor constituted a communication "in connection with the collection of any debt" within the meaning of § 1692c(b)'s key phrase.

On July 28, 2021, Plaintiff commenced this action against Defendant alleging violations of the FDCPA and FCCPA. *See,* DE 1, generally. In his Complaint, Plaintiff alleges that Defendant communicated with a third party letter vendor, in connection with the collection of a consumer debt from Plaintiff and without Plaintiff's consent, in violation of 15 U.S.C. § 1692c(b) and Fla. Stat. § 559.72(5). *See, Id.* at ¶¶ 24 – 33, 36, and 40. Plaintiff's allegations are materially indistinct from

those at issue in *Hunstein*. In response, Defendant admitted Plaintiff's factual allegations. *See,* DE 6 at ¶¶ 24 – 31. Specifically, Defendant has conceded that it communicated with a third party "to assist in the preparation and mailing of written communications to its patient/debtors", including Plaintiff. *Id.*

These admissions and this Circuit's precedent notwithstanding, Defendant requests judgment on the pleadings. Because settled law forbids the Court from granting Defendant the relief requested, Defendant's Motion is due to be denied.

## III.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), after the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings. Fed.R.Civ.P 12(h)(2) permits the defense of failure to state a claim upon which relief can be granted to be raised in a motion for judgment on the pleadings. For purposes of a Rule 12(c) motion for judgment on the pleadings, all well-pleaded allegations of the claim or counterclaim must be accepted as true.  Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999).  All facts in the complaint must be accepted as true and viewed in a light most favorable to the nonmoving party. *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir. 1998).

It is well settled that when ruling "on a motion for judgment on the pleadings, the Court is not allowed to consider any matter that is outside of the pleadings." *Al-Hakim v. Roberts*, 808CV01370T17EAJ, 2009 WL 2147062, at \*2 (M.D. Fla. July 13, 2009); *see also, Commun. Ctr., Inc. v. Komatsu*, 6:05CV1254ORL31GJK, 2008 WL 1777725, at \*2 (M.D. Fla. Apr. 18, 2008)("[i]n assessing a motion for judgment on the pleadings, the court may not consider matters outside the pleadings.")(citing *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir.2002)).

### IV.    Arguments

#### a. The Court Lacks the Discretion to Apply the Eleventh Circuit's Ruling in *Hunstein* Purely Prospectively.

Despite the plain language of the FDCPA, Defendant asserts that it is entitled to a judgment on all claims "because the balance of equities is in favor of prospectively applying the *Hunstein* matter to this action." *See,* DE 16 at p. 6. While Defendant concedes that "[g]enerally, new rules of law are applied retroactively as well as prospectively",[4] Defendant argues that *Chevron Oil Co. v. Huson*,[5] permits this Court to apply the *Hunstein* ruling "prospective-only". *Id.* at p. 7. In support, Defendant relies upon *Glazner v. Glazner*, 347 F.3d 1212, 1216 (11th Cir. 2003). *Id.*

---

[4] *See,* DE 16 at p. 7 ((citing *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 544 (11th Cir. 2002)(en banc)).

[5] *Chevron Oil Co. v. Huson*, 404 U.S. 97, 105-109, 92 S. Ct. 349, 354-356, 30 L. Ed. 2d 296 (1971).

However, because the Eleventh Circuit applied its ruling in *Hunstein* to the litigants in that case, this Court is precluded from applying *Hunstein* purely prospectively. *See, e.g., Harper v. Va. Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).

In its recitation of the *Chevron Oil* test and factors, Defendant ignores a crucial and dispositive caveat that forecloses its non-retroactive application argument. As the United States Supreme Court ruled in *Harper*:

> When [a court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the court's] announcement of the rule.

*Id.*, 509 U.S. at 97.

The Eleventh Circuit's decision in *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835 (11th Cir. 2018), is instructive. There, owners and operators of a grocery store chain brought actions against competing retailers to enforce "grocery exclusive" provisions in their shopping center leases. *Id.* Central to the dispute was the meaning of the terms "groceries" and "sales area" in the exclusivity provisions. *Id.* at 840. The district court found the terms ambiguous under Florida law. *Id.* at 841. On appeal, the Eleventh Circuit reversed and remanded for a new trial

consistent with *Winn-Dixie Stores, Inc. v. 99 Cent Stuff-Trail Plaza*,[6] a 2002 Florida state appellate decision applying dictionary definitions to the same terms. *Id*. On remand, the district court declined to apply the *99 Cent* definitions of "groceries" and "sales area" to leases executed before the date of the *99 Cent* decision, reasoning that while the defendants had notice of the existence of the grocery exclusive provisions when they entered into their leases, they did not have notice of the actual scope of those provisions until the February 20, 2002 decision in *99 Cent*. *Id.* at 842. The district court then entered summary judgment in favor of the defendants, and a second appeal followed. *Id.* at 843.

On the second appeal, the defendant-appellees argued that application of the *99 Cent* decision to leases executed before that decision was issued violated "fundamental notions of fairness and due process". *Id.* at 847.  Relying on the proposition that there is a "strong presumption against retroactive application" of state and federal statutes, the defendant-appellees argued that "the *99 Cent* decision had the same effect as a statutory codification of definitions for 'groceries' and 'sales area' in this case." *Id.* The Eleventh Circuit rejected this argument, holding that:

> But so do a lot of judicial decisions, including most or all of the decisions defining statutory terms. A judicial decision is not, however, a statute. And as Justice Holmes once put it, "[j]udicial decisions have had retrospective operation for near a thousand years." *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (Holmes, J.,

---

[6] *Winn-Dixie Stores, Inc. v. 99 Cent Stuff-Trail Plaza, LLC*, 811 So. 2d 719 (Fla. 3d Dist. App. 2002).

dissenting); *cf. Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) ("[In civil cases, when the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect ... as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) (same). Judicial decisions operate the same way in Florida, as well, having retroactive effect. *See Robbat v. Robbat*, 643 So.2d 1153, 1156 (Fla. 4th DCA 1994) ("In saying what the common law is in 1981, the highest court in the state was stating by necessary implication what the law had always been. The role of judges is only to find the law, not to make it or state what it will be or might have been. ... [W]hen a state's highest court states what appears to be partially prospective law, its decision should not be interpreted to be any less retroactive than the court has itself expressly stated. There should be the strongest presumption against implied prospectivity.") (footnote omitted); *see also Phillips v. State*, 623 So.2d 621, 621 n.1 (Fla. 4th DCA 1993) ("As Justice Scalia explained in his concurring opinion in *Harper*, '[T]he true <u>traditional</u> view is that prospective decision-making is quite incompatible with the judicial power, and that the courts have no authority to engage in the practice.'") (quoting *Harper*, 509 U.S. at 106, 113 S.Ct. at 2522 (Scalia, J., concurring)); *cf. Smith v. State*, 598 So.2d 1063, 1066 (Fla. 1992) ("[A]ny decision of this Court announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final."). **Unlike the enactment of a statute, the *99 Cent* decision did not create law; it stated what the terms "groceries" and "sales area" had always meant. *See Robbat*, 643 So.2d at 1156.**

**Not only that, but the defendants' contention that the *99 Cent* definitions cannot be applied to leases executed before that decision was issued cannot be reconciled with that decision itself. Under the defendants' logic, the *99 Cent* court could not have applied the definitions of "groceries" and "sales area" to the leases at issue in that case because the defendant would not have known what those terms meant until the appellate decision in his own**

> **case was issued in 2002. But the *99 Cent* court did apply the definitions of "groceries" and "sales area" it announced to leases in that case which, of course, predated the issuance of the decision.**

*Id.* at 847–48 (emphasis added).

Other Circuit Courts have similarly refused to excuse violations of the FDCPA on the grounds that defendants were relying on precedent at the time of the violation. *See, e.g., Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC,* 864 F.3d 492 (7th Cir. 2017)(en banc)("The issue in this appeal is whether a collector of consumer debts that violated the venue provision of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692i(a)(2) ('the FDCPA' or 'the Act'), can avoid liability on the ground that it was relying on *Newsom* as controlling circuit precedent interpreting the statute when it committed the violation. The answer is no."); *Daubert v. NRA Group, LLC*, 861 F.3d 382 (3d Cir. 2017)("Where an issue of law under the FDCPA is unsettled by the Supreme Court or a precedential decision of the relevant court of appeals, debt collectors can't escape a district court's finding of FDCPA liability under the bona fide error defense by pointing to the persuasive authority they relied on at the time to justify their conduct.")

In the instant case, as in *Winn-Dixie Stores*, Defendant's "balance of equities" argument axiomatically fails as the Eleventh Circuit applied its *Hunstein* decision to the parties in that case, thus leaving this Court no option but to apply that ruling to all events, regardless of whether such events predate or postdate the decision.

Moreover, "[u]nlike the enactment of a statute, the [*Hunstein*] decision did not create law; it stated what the terms ["in connection with the collection of any debt" under section 1692c] had always meant." *Winn-Dixie Stores*, 881 F.3d at 848. Indeed, conspicuously absent from Defendant's brief is citation to **any** controlling legal authority supporting its position that, notwithstanding the fact that the ruling was applied to the *Hunstein* litigants, this Court can now ignore the *Hunstein* decision. This is unsurprising, since there is none. Binding authority, on the other hand, forbids such a result. *See, e.g., James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 540, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (holding that because the Supreme Court in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), had applied the legal rule it announced to the litigants in that case, courts were precluded from determining that Bacchus could be applied purely prospectively on the basis of *Chevron Oil*).

Defendant's reliance on *Glazner* is misplaced. In *Glazner,* the Eleventh Circuit reiterated that a court still has discretion to apply new legal rules purely prospectively under the *Chevron Oil* test and undertook that analysis. *Glazner,* 347 F.3d at 1220. However, the Eleventh Circuit had discretion to consider non-retroactive application when it decided *Glazner* because it actually announced a new legal rule. *See id.* at 1216 (overruling *Simpson v. Simpson,* 490 F.2d 803 (5th

Cir.1974)).[7] In comparison, the Court here is not traversing unknown terrain; rather, the Court is bound by *Hunstein.* Because the Eleventh Circuit applied its holding in *Hunstein* to the litigants in that case, this Court must apply *Hunstein* retroactively to the parties here. *See Harper,* 509 U.S. at 97, 113 S.Ct. 2510; *see also, Durling v. Credit Corp Sols., Inc.*, 21-61002-CIV, 2021 WL 2885879, at *1 (S.D. Fla. July 8, 2021)("[T]he Court notes that *Hunstein*, 994 F.3d 1341 (11th Cir. 2021), is a published opinion. Pursuant to Eleventh Circuit Internal Operating Procedure – Circuit Rule 36, '[u]nder the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect the result.'"); *Santiago v. Medicredit, Inc.*, 21-CV-61424-WPD, 2021 WL 3615705, at *1 (S.D. Fla. Aug. 12, 2021)("In *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, a published decision binding on this Court, the Eleventh Circuit held that a violation of § 1692c(b) gives rise to a concrete injury in fact for Article III standing and that a debt collector's transmittal of the consumer's personal information to a third-party vendor for sending a dunning letter constituted a communication 'in connection with the collection of any debt' within the meaning of § 1692c(b). The Court finds that *Hunstein* squarely applies to the Complaint in this case and, because it is Eleventh Circuit binding precedent, requires this Court's denial of Defendant's motion to

---

[7] The Eleventh Circuit has adopted all decisions of the Fifth Circuit handed down on or before September 30, 1981 as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

dismiss for failure to state a claim as to the Fair Debt Collection Practices Act ("FDCPA") claim in this case.")(internal citations omitted).

As settled law renders Defendant's request for judgment on the pleadings through a "purely-prospective" application of *Hunstein* untenable, Defendant's Motion should be denied.

### b.  Mistake of Law is Not a Defense to a FDPCA Claim.

Also foreclosed by United States Supreme Court precedent is any notion that "mistake of law" is a viable defense to a FDCPA claim. *See, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 573 (2010).

In *Jerman*, the plaintiff alleged that the defendant-debt collector violated section 1692g of the FDCPA by stating that her debt would be assumed valid unless she disputed it in writing. *Id.* at 579. Despite finding that the defendant's conduct did violate the FDCPA, the trial court entered summary judgment in the defendant's favor finding that section 1692k(c)[8] shielded it from liability because the violation was not intentional, resulted from a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. *Id.* The Sixth Circuit affirmed, but the Supreme Court reversed, ruling that:

> We decline to adopt the expansive reading of § 1692k(c) that Carlisle proposes. We have long recognized the "common

---

[8] 15 U.S.C. 1692k(c) provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

> maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." *Barlow v. United States,* 7 Pet. 404, 411, 8 L.Ed. 728 (1833) (opinion for the Court by Story, J.); *see also Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system"). Our law is therefore no stranger to the possibility that an act may be "intentional" for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.

*Id.* at 581–83 (2010).

Here, as in *Jerman*, Defendant's alleged ignorance of the consequences of its admittedly intentional conduct provides no escape from liability.

### c. Even if Plaintiff Lacks Article III Standing, the Remedy is Remand, Not Judgment.

This action was commenced in state court, and subsequently removed by Defendant. *See,* DE 1. Citing to the pending motion for rehearing *en banc* in *Hunstein*, Defendant argues that "it appears that a focal point of any re-rehearing with review [in *Hunstein*] is whether the plaintiff had maintained Article III standing to bring such an action. If the Eleventh Circuit determines that Hunstein lacked standing, the opinion will be vacated and void." *See,* DE 16 at p. 10. Defendant ignores, however, that were it to be determined that Hunstein and, in turn, Plaintiff, lack Article III standing, this Court would then be required to remand Plaintiff's claims back to state court for lack of subject matter jurisdiction. *See,* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks

subject matter jurisdiction, the case shall be remanded."); *see also*, *Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1222 (S.D. Fla. 2020)("if a plaintiff is found to lack standing **at any point** in the case, the action must be remanded")(emphasis in original); *Jenkins v. Simply Healthcare Plans, Inc.*, 20-22677-CIV, 2020 WL 4932105 (S.D. Fla. Aug. 17, 2020)("With no concrete injury, and thus no standing, Simply Healthcare has not met its burden to show that the Court has subject matter jurisdiction over this action. Remand is the proper course."); *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, 499 F. Supp. 3d 1160, 1168 (S.D. Fla. 2020)("Given that this suit does not satisfy Article III's case-or-controversy requirement, the Court is left with only one option: remand the matter to the state court whence it came."); *Khan v. Metro. Cas. Ins. Co.*, 6:12-CV-1354-ORL-KRS, 2014 WL 12791874, at *7 (M.D. Fla. Mar. 6, 2014)("the Court has determined that it lacks subject-matter jurisdiction over this case. Therefore, pursuant to § 1447(c), the Court must remand it to state court."); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 505 (8th Cir. 2018), *cert. denied*, ─── U.S. ────, 139 S. Ct. 1198, 203 L.Ed.2d 204 (2019) ("For these reasons, although we agree with the district court's conclusion that St. Louis Heart Center

lacks Article III standing, we vacate the judgment dismissing the action with prejudice and remand with directions to return the case to state court.").[9]

In short, the mere possibility that a pending motion for rehearing *en banc* in *Hunstein* "might" ultimately lead to a finding that Hunstein and Plaintiff lack Article III standing certainly does not support the entry of judgment on the pleadings for Defendant.

### d. Defendant Improperly Requests Consideration of Matters Outside the Pleadings.

It is long beyond debate that when ruling on a Rule 12(c) motion for judgment on the pleadings, the Court must "accept as true all material facts alleged in the non-moving party's pleading" and "will not consider matters outside the pleadings." *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 770 (11th Cir. 2020); *Horsley v. Feldt*, 304 F.3d 1125, 1136 (11th Cir. 2002). These venerable rules notwithstanding, Defendant would support its request for judgment on the pleadings with a plethora of assertions which violate them, in that they are all completely unsubstantiated[10] and entirely outside the pleadings. Specifically, Defendant improperly asks the Court to consider the following bald assertions when ruling on Defendant's Motion:

---

[9] It is curious that Defendant would suggest Plaintiff may lack Article III standing to pursue his claims in this Court, given that Defendant removed this case from state court to this jurisdiction.

[10] "[C]ounsel's argument is not evidence." *Bryant v. U.S. Steel Corp.*, 428 Fed. Appx. 895, 897 (11th Cir. 2011).

- During the period in which the subject letter was mailed to the consumer by HRRG, the Defendant was acting in reliance upon the fact that no federal court had issued an opinion finding that the use of a letter vendor in aiding the conveyance of debt collection letters violated the FDCPA. *See,* DE 16 at p. 2.

- At the time, HRRG was acting in reliance upon the October 29, 2019, decision in which this district court issued an Order granting Defendant's Motion to Dismiss in *Hunstein v. Preferred Collection and Management Services, Inc.*, 2019 U.S. Dist. LEXIS 187061; 2019 WL 5578878 (M.D. Fla. 2019), on the exact issue in this case. *See*, DE 16 at p. 2.

- Since April 21, 2021, chaos has been unleashed within the federal district courts of the Eleventh Circuit since numerous "copy-cat" lawsuits have been filed to take advantage of the reversal in *Hunstein* against the debt collection industry; the industry has relied upon the use of Letter Vendors to assist in the production of debt collection letters for the past thirty years without issue. *See*, DE 16 at p. 3.

- [T]he [debt collection] industry[] [has] utilize[ed] [] third-party vendors for more than 25 years. *See,* DE 16 at p. 8.

- The [*Hunstein*] decision upended the long-standing and relatively routine business practice of debt collectors using third-party vendors to manage, service, and collect outstanding debt. *See,* DE 16 at p. 9.

- [T]he "rug pulling" impact this case has had on HRRG as well as others in the collection industry[.] *See,* DE 16 at p. 9.

- [T]he *Hunstein* court's broad interpretation of the FDCPA has opened the flood gates for FDCPA litigation. […] Since the *Hunstein* decision was handed down, the retroactive impact of the *Hunstein* opinion has generated at least 300 individual and class action "copy-cat" lawsuits against debt collectors since the date of the opinion on April 21, 2021. Consequently, the *Hunstein* court's broad interpretation of the FDCPA has opened the flood gates for consumers to file FDCPA claims. *See,* DE 16 at p. 12.

- The difficulties faced by many debt collectors to mass-mail numerous collection letters to consumers that would otherwise be sent to its letter vendors are significant and costly. *See,* DE 16 at p. 12 – 13.

- [S]ubstantial resources that the debt collector industry alone will have to endure from the *Hunstein* decision by mass-mailing in-house. *See,* DE 16 at p. 13.

Because <u>all</u> of these assertions are both unsupported by any allegations entitled to a presumption of truth <u>and</u> extraneous to the pleadings, the Court cannot consider them when ruling upon Defendant's Motion.

**V.    Conclusion.**

At bottom, Defendant's argument is fatally flawed as it ignores the threshold inquiry of the *Chevron Oil* test. Because the Eleventh Circuit applied its ruling to the litigants in that case, this Court lacks the discretion to decline to apply *Hunstein* retroactively. Defendant's Motion must be denied on this basis alone. Further, and as discussed above, Defendant's remaining contentions has no basis in law or in fact, and are otherwise improper. Accordingly, they merit no weight in this Court's decision.

WHEREFORE Plaintiff respectfully requests an Order from this Honorable Court DENYING Defendant's Motion for Judgment on the Pleadings (DE 16).

Respectfully submitted by:

/s/ *Benjamin W. Raslavich*
**BENJAMIN W. RASLAVICH, ESQ.**
Florida Bar No.: 0102808
**KUHN RASLAVICH, P.A.**
2110 West Platt Street
Tampa, Florida 33606
Telephone: (813) 422 – 7782
Facsimile: (813) 422 – 7783
ben@theKRfirm.com
Counsel for Plaintiff

## __CERTIFICATE OF SERVICE__

I HEREBY CERTIFY that on September 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/ Benjamin W. Raslavich_____
**BENJAMIN W. RASLAVICH, ESQ.**
Florida Bar No.: 0102808
